1  KRISTIN L. MARTIN (SBN 206528)
   ERIC B. MYERS (SBN 223125)
2  DAVIS, COWELL & BOWE, LLP
3  595 Market Street, Suite 800
   San Francisco, CA 94105
4  Telephone:   (415) 597-7200
   Facsimile:   (415) 597-7201
5  E-mail:      klm@dcbsf.com

6
   Attorney for Plaintiff
7  *UNITE HERE International Union*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITE HERE INTERNATIONAL UNION, | Case No. 2:16-cv-000384-TLN-EFB |
| Plaintiff, | |
| v. | **NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS AND TO STRIKE AFFIRMATIVE DEFENSES** |
| SHINGLE SPRINGS BAND OF MIWOK INDIANS, DOES 1-100; | |
| Defendant. | **[Fed. R. Civ. P. 12(c), (f)]** |

TO DEFENDANT AND ITS ATTORNEYS OF RECORD:

  PLEASE TAKE NOTICE that on October 6, 2016, 2016 at 2:00 p.m., or as soon thereafter as the matter may be heard in the above-entitled court, located at the Robert T. Masui United States Courthouse, 501 I Street, Sacramento, California, Courtroom 2, 8th Floor, UNITE HERE International Union will move before the Honorable Troy L. Nunley, United States District Judge for an order, pursuant to Federal Rule of Civil Procedure 12(c), granting judgment on the pleadings in favor of Plaintiff and compelling arbitration; or in the alternative, for an order pursuant to Federal Rule of Civil Procedure 12(f) striking Defendant's affirmative defenses.

1

**MOTION FOR JUDGMENT ON THE PLEADINGS**
**AND TO STRIKE AFFIRMATIVE DEFENSES**    Case No. 2:16-cv-000384-TLN-EFB

This motion is based on the attached memorandum of law, all papers already on file in this action, and such further evidence and argument as the Court shall permit.

Dated: August 26, 2016

Respectfully submitted,

**DAVIS, COWELL & BOWE, LLP**

By: */s/ Kristin L. Martin*
     Kristin L. Martin
595 Market Street, Suite 800
San Francisco, California 94105
Tel: (415) 597-7200; Fax: (415) 597-7201

*Attorneys for UNITE HERE International Union*

KRISTIN L. MARTIN (SBN 206528)
ERIC B. MYERS (SBN 223125)
DAVIS, COWELL & BOWE, LLP
595 Market Street, Suite 800
San Francisco, CA 94105
Telephone:    (415) 597-7200
Facsimile:    (415) 597-7201
E-mail:       klm@dcbsf.com

Attorney for Plaintiff
*UNITE HERE International Union*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITE HERE INTERNATIONAL UNION,<br><br>        Plaintiff,<br><br>v.<br><br>SHINGLE SPRINGS BAND OF MIWOK INDIANS, DOES 1-100;<br><br>        Defendant. | Case No. 2:16-cv-000384-TLN-EFB<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF UNITE HERE INTERNATIONAL UNION's MOTION FOR JUDGMENT ON THE PLEADINGS AND TO STRIKE AFFIRMATIVE DEFENSES**<br><br>**[Fed. R. Civ. P. 12(c), (f)]** |

**Introduction**

UNITE HERE International Union ("Union") and the Shingle Springs Band of Miwok Indians ("Tribe") made an agreement about organizing the Tribe's casino employees into a union. The Union thinks that the Tribe violated that agreement when it discharged two employees for supporting its organizing efforts. The Tribe disagrees. Their agreement contains a broad arbitration clause, covering any dispute about "interpretation or application" of the agreement that has no exceptions. Accordingly, the Union requested to arbitrate the dispute over whether the employee discharges violated the parties'

1

agreement on organizing. The Tribe refused, and so the Union filed this Petition to Compel Arbitration. The Union now seeks a court order granting the Union judgment on the pleadings and compelling arbitration.

**Statement of Undisputed Facts**

The Tribe owns and operates the Red Hawk Casino. Petition to Compel Arbitration ("Petition"), ¶ 2; Response to Petition to Compel Arbitration ("Answer"), ¶ 2; and the Union is a labor organization. Petition, ¶ 3.[1] The Union and the Tribe entered into a Memorandum of Agreement ("MOA") that establishes procedures for the Union to organize Red Hawk Casino employees into a union if they so desire. Petition, ¶ 15 & Exh. A; Answer, ¶ 15. The MOA, at paragraph 10, contains a dispute-resolution procedure that first requires mediation and then culminates in arbitration. Petition, ¶ 16.[2]

On about November 18, 2015, the Union notified the Tribe by letter of a dispute about the interpretation or application of the MOA, and submitted the dispute to arbitration. Petition, ¶ 18; Answer, ¶ 18. In that letter, the Union described the dispute as follows:

---

[1] The Tribe denied this allegation on the ground that it "lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained therein." Answer, ¶ 3. This denial is disingenuous and invalid. In a related Complaint for Declaratory Relief that the Tribe filed against the Union in this Court (Case No. 16-cv-01057-TLN-EFB), the Tribe alleged the same exact facts as alleged in paragraph 3 of the Petition: the Union "is a labor organization representing employees in industries affecting commerce" and it "represents employees in the Eastern District of California." Complaint for Declaratory Relief, ¶ 2. "[A] party may not deny sufficient information or knowledge with impunity, but is subject to the requirements of honesty in pleading. An averment will be deemed admitted when the matter is obviously one as to which a defendant has knowledge or information." *Djourabchi v. Self,* 571 F.Supp.2d 41, 50 (D.D.C. 2008).

[2] Paragraph 16 of the Petition quotes the MOA's dispute-resolution provision. The Tribe answered paragraph 16 of the Petition by stating, "Answering paragraph 16 of the Petition, the Tribe denies that the referenced documents support the claims alleged in the Petition." This response should be deemed an admission because it does not "fairly respond to the substance of the allegation." Fed. R. Civ. P. 8(b)(2); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied."). *Cf. U.S. ex rel. Minge v. TECT Aerospace, Inc.*, 2011 WL 2473076, at *2 (D. Kan. June 21, 2011) (response "denied as phrased" does not fairly respond to the substance of the complaint); *Lane v. Page*, 272 F.R.D. 581, 602 (D.N.M. 2011) ("Responses that documents speak for themselves and that allegations are legal conclusions do not comply with Rule 8(b)'s requirements."). In any event, the Tribe admitted that Exhibit A to the Petition is the MOA. Petition, ¶ 15, Exh. A; Answer, ¶ 15.

2

**MEMORANDUM ISO MOTION FOR JUDGMENT ON THE
PLEADINGS AND TO STRIKE AFFIRMATIVE DEFENSES**  Case No. 2:16-cv-000384-TLN-EFB

> Paragraph 5 of that Agreement requires the Tribe to be neutral with respect to employees' choice whether to be represented by UNITE HERE. We have learned of repeated violations of this policy by Casino managers. These violations have taken the form of threats, surveillance and instructions to employees that they may not even talk about the union. Most egregiously, employee Christopher Garrigues was terminated because he solicited support for the union during his break time.

Petition, ¶ 18 & Exh. C; Answer, ¶ 18.[3] The Union later asserted that the Tribe violated the MOA by discharging a second employee named Kerry Bond. Petition, ¶ 27; Answer, ¶ 27.

On January 7, 2016, the parties mediated their disputes but did not resolve them. Petition, ¶¶ 19, 21-23; Answer, ¶¶ 19, 21-23. On January 28, 2016, the parties agreed that John Kagel would serve as arbitrator. Petition, ¶ 20; Answer, ¶ 20. On February 4, 2016, the Tribe refused to arbitrate the dispute over the employees' discharges. Petition, ¶ 27; Answer, ¶ 27.

**Procedural History**

The Union filed this Petition to Compel Arbitration on February 22, 2016. ECF No. 2. The Tribe responded by moving to dismiss for failure to state a claim. ECF No. 6. The Court denied that motion on July 27, 2016, ECF No. 14; and on August 17, 2016, the Tribe filed an Answer. ECF No. 18. The Union now moves for judgment on the pleadings.

Meanwhile, on May 18, 2016, the Tribe filed a second case -- *Shingle Springs Band of Miwok Indians v. UNITE HERE International Union*, Case No. 2:16-cv-01057-TLN-EFB (the "Declaratory Judgment Action") -- regarding the same disputes at issue in this case.[4] In the Declaratory Judgment Action, the Tribe seeks declaratory judgments that it cannot be required to arbitrate this dispute and that arbitrating the dispute would violate the National Labor Relations Act. UNITE HERE moved to dismiss the complaint in the Declaratory Judgment Action, in part because the Tribe is not entitled to declaratory relief about a dispute that it agreed to arbitrate. ECF No. 9. That motion has been fully briefed and is pending before the Court.

---

[3] The Tribe's answers to paragraphs 17, 18, 26 and 28 of the Petition also fail to "fairly respond to the substance of the allegation" and as a result, should also be deemed admissions.

[4] On June 29, 2016, this Court issued an order relating the cases because the actions involve the same parties, are based on the same claims, the same event, the same questions of fact and the same questions of law. ECF No. 13.

3

**MEMORANDUM ISO MOTION FOR JUDGMENT ON THE**
**PLEADINGS AND TO STRIKE AFFIRMATIVE DEFENSES**  Case No. 2:16-cv-000384-TLN-EFB

The argument in this brief largely replicates arguments that appear in briefing in connection with the Tribe's motion to dismiss this case and the Union's motion to dismiss the Declaratory Judgment Action.

## Argument

"Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Here, there are no disputes about the material facts, so arbitration should be ordered. But if the Court declines to grant the Union judgment on the pleadings, the Union requests that the Court strike the Tribe's affirmative defenses pursuant to Rule 12(f) as immaterial.

### A.     The Union is entitled to an order compelling arbitration.

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, empowers the federal courts to enforce arbitration agreements in labor contracts by ordering parties to arbitrate. *Textile Workers v. Lincoln Mills of Ala.*, 353 U.S. 448, 450-51 (1957); *see also Goodall-Sanford, Inc. v. United Textile Workers Local 1802*, 353 U.S. 550, 551 (1957) (compelling arbitration and explaining that the right to arbitration arises under § 301(a)). The court's "very limited" function "when the parties have agreed to submit all questions of contract interpretation to the arbitrator" is "to ascertain[] whether the party seeking arbitration is making a claim which on its face is governed by the contract." *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567 (1960).

Here, the Union's claim is, on its face, governed by the MOA. The Union contends that the Tribe breached the MOA's neutrality provision (¶ 5) when it fired two employees. Petition, ¶¶ 18, 27. The Tribe disagrees with the Union's interpretation of the neutrality provision. Answer, ¶¶ 18, 27 & Tenth Affirmative Defense. In the MOA, the Tribe agreed to "expedited and binding arbitration" of "any disputes over the interpretation or application of this Agreement." Petition, Exh. A (¶ 10). The parties have a dispute about "interpretation or application" of the MOA: whether the neutrality provision prohibits the Tribe from firing employees for union organizing. They have satisfied the MOA's requirement of pre-arbitration mediation, so their dispute is now ripe for arbitration.

It is not for the Court to decide whether the Union or the Tribe is correct that the Tribe did (or did not) breach the MOA. When a labor contract includes an agreement to arbitrate, the question how to

4

interpret the contract must be left to the arbitrator. *Steelworkers v. American Mfg. Co.*, 363 U.S. at 567-68 ("Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for. The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim."); *AT&T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643, 649-50 (1986) ("[A] court is not to rule on the potential merits of the underlying claims. Whether 'arguable' or not, indeed even it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, but the arbitrator.").[5]

**B.  The Tribe's affirmative defenses lack merit.**

The Tribe asserts fourteen separate affirmative defenses, many of which are repetitive. The First Affirmative Defense (for failure to state a claim) and the Tenth Affirmative Defense (which asserts that the Tribe did not breach the MOA) lack merit for the reasons explained in the preceding section. The remaining affirmative defenses are addressed below in a logical order.

**1.  The Sixth, Seventh and Eighth Affirmative Defenses**

In the sixth, seventh and eighth affirmative defenses, the Tribe asserts that the MOA does not obligate it to arbitrate any disputes about employee discharges and discipline. The Tribe is wrong. While the MOA does not give employees a general protection against wrongful discipline or discharge, it does require the Tribe to arbitrate disputes about whether discipline or discharge violates the MOA. This obligation flows from the MOA's broad arbitration clause.

---

[5] In *American Manufacturing*, the Court succinctly explained why arbitration should have been ordered in that case: "The union claimed in this case that the company had violated a specific provision of the contract. The company took the position that it had not violated that clause. There was, therefore, a dispute between the parties as to 'the meaning, interpretation and application' of the collective bargaining agreement. Arbitration should have been ordered." 363 U.S. at 569. This dispute can be summarized in exactly the same way.

5

The Tribe and the Union agreed to arbitrate "any disputes over the interpretation or application" of the MOA. Petition, Exh. A (¶ 10). Paragraph 5 of the MOA requires the Tribe to be neutral with respect to union organizing. The parties disagree about whether paragraph 5 prohibits the Tribe from discharging employees because of the employees' union activity. The Union says that it does; the Tribe says that it does not. This is a dispute about "the interpretation or application" of paragraph 5 which the parties agreed would be resolved through arbitration.

In prior briefing, the Tribe touted the principle that disputes about substantive arbitrability – that is, whether the parties agreed to arbitrate – are often for the courts to decide. This case does not present a dispute about substantive arbitrability. Disputes about substantive arbitrability typically take two forms. If one party disputes that it entered into an agreement containing a promise to arbitrate, the court must decide whether a contract was even formed. *See, e.g.*, *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964). The other category of cases arises when the promise to arbitrate is limited, and expressly excludes some disputes from its reach.[6] *See, e.g.*, *AT&T Technologies,* 475 U.S. 643; *Warrior & Gulf Navigation*, 363 U.S. 574. This dispute is not of either type. The Tribe admits that it entered into the MOA with the Union. Petition, ¶15; Answer, ¶ 15. The MOA contains an agreement to arbitrate "any dispute over interpretation or application" of the MOA, and there are no exceptions to that promise.[7] Petition, ¶ 15 & Exh. A; Answer, ¶15.

---

[6] Courts interpret agreements to arbitrate by applying a "presumption of arbitrability." *AT&T Technologies*, 475 U.S. at 650. This presumption imposes a heavy burden on the party resisting arbitration to identify an "express provision excluding a particular grievance from arbitration" or "forceful evidence of a purpose to exclude the claim from arbitration." *Warrior & Gulf Navigation*, 363 U.S. at 584-85; *see also Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752*, 989 F.2d 1077, 1080 (9th Cir. 1993) ("The party contesting arbitrability bears the burden of demonstrating how the language in the collective bargaining agreement excludes a particular dispute from arbitration."). As a result, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is *not* susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf Navigation*, 363 U.S. at 584. This presumption ensures that courts do not "become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator." *Id.* at 585.

[7] Even if there were an exception, it would be up to the arbitrator, not the Court, to decide whether that exception applies here. That is because contracting parties can agree to arbitrate disputes about the

6

### 2. The Third, Fourth and Fifth Affirmative Defenses

The third affirmative defense asserts that the MOA is not a collective bargaining agreement. The fourth and fifth affirmative defenses assert that arbitrating this dispute would violate the National Labor Relations Act, 29 U.S.C. § 151 *et seq* ("NLRA"). The Tribe theorizes that the NLRA prohibits the parties from arbitrating because the Union is not the employees' exclusive collective bargaining representative, and the parties have not agreed to a contract governing employees' terms and conditions of employment.[8]

The Tribe is correct that the MOA is not a collective bargaining agreement but a § 301 cause of action is not limited to collective bargaining agreements. It extends to all labor contracts. *Retail Clerks Int'l Ass'n v. Lion Dry Goods, Inc.*, 369 U.S. 17, 25-26 (1962) ("'[C]ontracts' does include more than 'collective bargaining agreements,' at least as respondents would define them. . . . Congress was not indulging in surplusage: A federal forum was provided for actions on other labor contracts besides collective bargaining contracts."). Section 301 governs contracts, like the MOA at issue here, that establish procedures for organizing unorganized employees. *See, e.g.*, *Service Employees Int'l Union v. St. Vincent Medical Ctr.*, 344 F.3d 977, 979 (9th Cir. 2003); *Hotel & Restaurant Employees Union Local 217 v. J.P. Morgan Hotel*, 996 F.2d 561, 564-65 (2d Cir. 1993); *Hotel Employees & Restaurant Employees Local 2 v. Marriott Corp.*, 961 F.2d 1464, 1466 (9th Cir. 1992). Federal courts have ordered arbitration of disputes arising out of agreements about the procedures for organizing employees. *St. Vincent Medical Center*, 344 F.3d at 985-86; *J.P. Morgan Hotel*, 996 F.2d at 568.

---

scope of their agreement to arbitrate, *Granite Rock*, 561 U.S. at 297-98 n.5; *AT&T Technologies*, 475 U.S. at 649; and the Ninth Circuit holds that an agreement giving the arbitrator authority to decide "all disputes regarding the interpretation or application" of the agreement does just that. *Pacesetter Construction Co. v. Carpenters*, 116 F.3d 436, 439 (9th Cir. 1997); *Local 1780 v. Desert Palace*, 94 F.3d 1308, 1310 (9th Cir. 1996); *So. Cal. Dist. Council of Laborers v. Berry Const.*, 984 F. 2d 340, 344 (9th Cir. 1993); New England Mechanical, Inc. v. Laborers Local Union 294, 909 F.2d 1339, 1354 (9th Cir. 1990). In other words, by giving the arbitrator authority to interpret and apply the agreement, the parties give the arbitrator authority to decide his jurisdiction. The MOA's arbitration provision (paragraph 10) contains the exact phrase analyzed in those cases: it applies to "any disputes over the interpretation or application of this Agreement."

[8] If the Tribe thought this theory had merit, one would expect that it would have filed an unfair labor practice charge with the National Labor Relations Board against the Union for demanding arbitration with an illegal objective. The Tribe has not done so.

Paragraph 5 of the MOA – which the Union contends the Tribe violated when it discharged the two employees – is a standard "neutrality" clause. It requires the Tribe to "advise Bargaining Unit Employees that it is neutral to their selection of the Union as their exclusive representative" and prohibits the Tribe from "directly or indirectly stat[ing] or imply[ing] opposition to the selection by Bargaining Unit Employees of the Union as their exclusive representative." Petition, Exh. A (¶ 5(a)). The Ninth Circuit has already held that an employer's promise of neutrality does not violate the NLRA: "Nothing in the relevant statutes or NLRB decisions suggests that employers may not agree to remain silent during a union's organization campaign." *Marriott Corp.*, 961 F.2d at 1470; *see also Int'l Union v. Dana Corp.*, 278 F. 3d 548, 558-59 (6th Cir. 2002) (arbitrator's broad interpretation of neutrality clause is consistent with public policy). Other courts have also enforced such promises. *See, e.g.*, *St. Vincent Medical Ctr.*, 344 F.3d at 984; *J.P. Morgan Hotel*, 996 F.2d at 563; *ACTWU v. Facetglas, Inc.*, 845 F.2d 1250, 1251 (4th Cir. 1988).

The Tribe's theory – that is it illegal for an employer to express any support for a union – also lacks support. "An employer is also permitted to express to employees a desire to enter into a bargaining relationship with a particular union." *Dana Corp.*, 356 NLRB 256, 259 (2010), *enfd. sub nom. Montague v. NLRB*, 698 F.3d 307, 309 (6th Cir. 2012) (pre-recognition agreement between union and employer did not violate § 8(a)(2)); *see also Marriott Corp.*, 961 F.2d at 1467 n.6 (enforcing contract provision requiring employer to prefer union employees in hiring).

Nor will it violate the NLRA if the arbitrator interprets the MOA's neutrality provision as restricting the employer's ability to discharge employees for supporting the Union. The Tribe's theory is that it cannot agree with the Union to *change* employees' terms and conditions of employment since the Union is not the bargaining representative, but what the Union seeks is not a change of employees' terms and conditions of employment. The NLRA prohibits the Tribe from discharging employees for supporting a union, *see* 29 U.S.C. § 158(a)(1), (3); *Burnup & Sims*, 379 U.S. 21, 22 (1964); so interpreting the MOA as the Union advocates would not give employees rights that they do not already have. It would simply provide an arbitral remedy for violation of those rights. This is permitted. *See Facetglas*, 845 F.2d at 1253 (enforcing labor contract that prohibited discriminatory discharges even though union did not represent employees); *see also Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261,

8

**MEMORANDUM ISO MOTION FOR JUDGMENT ON THE
PLEADINGS AND TO STRIKE AFFIRMATIVE DEFENSES**     Case No. 2:16-cv-000384-TLN-EFB

268 (1964) (existence of a remedy before the Board does not bar remedy though enforcement of a § 301 contract); *IATSE v. InSync Show Prods., Inc.*, 801 F.3d 1033, 1041 n.6 (9th Cir. 2015) (same).

### 3. The Second and Thirteenth Affirmative Defenses

In the second affirmative defense, the Tribe asserts that the Union lacks standing to arbitrate disputes about employees; and in the thirteenth affirmative defense, the Tribe asserts that the discharged employees are not parties to the MOA. These defenses do not make any sense. The Union seeks to arbitrate and enforce its own right under the Agreement to a workplace environment untainted by violations of neutrality. The Union bargained for that environment because it enables the Union to organize employees without the employer's interference. *See* Petition, Exh. A (Recitals, ¶ D) (recognizing that the parties entered into the MOA because the Union might conduct an organizing campaign among employees).

### 4. The Fourth and Ninth Affirmative Defenses

In the fourth and ninth affirmative defenses, the Tribe asserts that tribal law justifies its refusal to arbitrate disputes with the Union about whether it violated the MOA. The short answer to this defense is that tribal law is irrelevant. As a labor agreement, the MOA is governed by federal common law, not state or tribal law. Section 301 of the LMRA authorizes federal courts to fashion a body of federal law for enforcement of labor contracts. *Lincoln Mills*, 353 U.S. at 450-51. The Union and the Tribe did not contract to replace federal law with tribal law.

The Tribe also refers to the "Tribal Labor Relations Ordinance." The Tribal Labor Relations Ordinance is referenced in MOA's Recitals, at paragraph B, which explains that the Tribe adopted the TLRO because its gaming compact with the State of California required it to do so. The TLRO is not unique to this Tribe. It was the product of gaming compact negotiation between the numerous tribes and the State of California in 1999. This history is recounted in *In re Indian Gaming Related Cases*, 331 F.3d 1094, 1116 (9th Cir. 2003). The TLRO largely replicates the NLRA because in 1999 it was unclear whether the National Labor Relations Act applied to tribal casinos. *San Manuel Indian Bingo & Casino*, 341 NLRB 1055 (2004) (reversing prior NLRB law and holding that the NLRA applies to tribal casinos), *enfd.* 475 F.3d 1306 (D.C. Cir. 2007). In any event, compelling arbitration of the parties'

9

**MEMORANDUM ISO MOTION FOR JUDGMENT ON THE
PLEADINGS AND TO STRIKE AFFIRMATIVE DEFENSES** Case No. 2:16-cv-000384-TLN-EFB

dispute would not violate the TLRO. The TLRO itself requires arbitration of disputes. Petition, ¶ 15, Exh, B (§ 13(c)).

### 5. The Eleventh and Twelfth Affirmative Defenses

In the eleventh and twelfth affirmative defenses, the Tribe says that its decisions about employee discipline and discharge are "purely a private, intramural personnel matter" and that it "has a recognized right to self-government."

In a brief filed in connection with the Tribe's Declaratory Judgment Action, the Tribe explained the theory behind these affirmative defenses. The Tribe cited *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113 (9th Cir. 1985) for that proposition that ordering arbitration would interfere with its "exclusive rights of self-governance in purely intramural matters." That phrase appears in *Coeur d'Alene Tribal Farm* but it has no relation to what the Tribe agreed in the MOA to do, and it has no bearing on whether the Tribe may be compelled to arbitrate. The *Coeur d'Alene Tribal Farm* court held that federal laws of general applicability apply to tribes and then identified several exceptions to that rule. One of the exceptions is for laws that "touch[] exclusive rights of self-governance in purely intramural matters." *Id.* at 1116. The Court explained that "intramural matters" include "conditions of tribal membership, inheritance rules, and domestic relations," but operating a commercial business employing non-Indians is not an intramural matter. *Id.*

The *Coeur d'Alene Tribal Farm* exception is irrelevant to this case because the Union does not seek to use arbitration to compel the Tribe to comply with a federal statute. It seeks to compel the Tribe to keep the promises it made in the MOA.[9]

---

[9] In addition, it is now well-established that a tribe's employment of non-Indians in a commercial business, including a tribal casino, is not an intramural matter so general federal employment laws apply. See, e.g., *Florida Paraplegic Ass'n v. Miccosukee Tribe of Indians of Florida*, 166 F.3d 1126, 1129 (11th Cir. 1999) (ADA applies to tribal entertainment complex); *Reich v. Mashantucket Sand & Gravel*, 95 F.3d 174, 180-81 (2d Cir. 1996) (OSHA applies to tribal construction company building casino); *Lumber Industry Pension Fund v. Warm Springs Forest Prods. Industries*, 939 F.2d 683, 685-86 (9th Cir. 1991) (ERISA applies to tribal business); *U.S. Dep't of Labor v. Occupational Safety & Health Review Comm'n*, 935 F.2d 182, 183 (9th Cir. 1991) (same). Cf. *Solis v. Matheson,* 563 F.3d 425 (9th Cir. 2009) (applying *Couer d'Alene Tribal Farm* to hold that FLSA governs a business on a reservation owned by tribal members). The National Labor Relations Act also applies to tribal casinos. See *NLRB v. Little River Band of Ottawa Indians Tribal Gov't*, 788 F.3d 537 (6th Cir. 2015), cert. denied 136 S.Ct. 2508 (June 27, 2016); *Soaring Eagle Casino & Resort v. NLRB*, 791 F.3d 648 (6th Cir.

**MEMORANDUM ISO MOTION FOR JUDGMENT ON THE
PLEADINGS AND TO STRIKE AFFIRMATIVE DEFENSES**     Case No. 2:16-cv-000384-TLN-EFB

### 6. The Fourteenth Affirmative Defense

In the fourteenth affirmative defense, the Tribe asserts that its "limited waiver of sovereign immunity" is solely for the "purpose of compelling arbitration or confirming an arbitration award." This is an action to confirm an arbitration award, so the waiver of sovereign immunity applies. The Tribe refers to the waiver of sovereign immunity contained in the Tribal Labor Relations Ordinance, but the Tribe also waived its sovereign immunity from suit "with respect to matters arising out of this Agreement" including in an "action to compel arbitration pursuant to this Agreement." Petition, ¶¶ 15, 17 & Exh. A (¶ 14(b)); Answer, ¶¶ 15, 17. *Cf. C&L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 418 (2001) (holding that tribes can waive sovereign immunity by agreeing to arbitrate). Sovereign immunity from suit is not a valid defense to this petition to compel arbitration.

### Conclusion

For all of the foregoing reasons, judgment on the pleadings should be granted in favor of the Union and arbitration should be compelled. In the alternative, the Tribe's affirmative defenses should be stricken.

Dated: August 26, 2016

Respectfully submitted,

**DAVIS, COWELL & BOWE, LLP**

By: */s/ Kristin L. Martin*
     Kristin L. Martin
595 Market Street, Suite 800
San Francisco, California 94105
Tel: (415) 597-7200; Fax: (415) 597-7201

*Attorneys for UNITE HERE International Union*

---

2015), cert. denied 136 S.Ct. 2509 (June 27, 2016); *San Manuel Indian Bingo & Casino*, 475 F.3d 1306, 1313 (D.C. Cir. 2007); *NLRB v. Chapa de Indian Health Program*, 316 F.3d 995, 998 (9th Cir. 2003). Cf. *NLRB v. Pueblo of San Juan*, 276 F.3d 1186, 1191 (10th Cir. 2002) (en banc) (in case involving tribal right-to-work law, clarifying that "that the general applicability of federal labor law is not at issue").

11

**MEMORANDUM ISO MOTION FOR JUDGMENT ON THE
PLEADINGS AND TO STRIKE AFFIRMATIVE DEFENSES**    Case No. 2:16-cv-000384-TLN-EFB

**MEMORANDUM ISO MOTION FOR JUDGMENT ON THE
PLEADINGS AND TO STRIKE AFFIRMATIVE DEFENSES**     Case No. 2:16-cv-000384-TLN-EFB

| | |
|---|---|
| 1 | **PROOF OF SERVICE** |
| 2 | I am employed in the city and county of San Francisco, State of California. I am over the age of eighteen years and not a party to the within action; my business address is: DAVIS, COWELL & BOWE, LLP, 595 Market Street, Suite 800, San Francisco, California 94105. |

**PROOF OF SERVICE**

I am employed in the city and county of San Francisco, State of California. I am over the age of eighteen years and not a party to the within action; my business address is: DAVIS, COWELL & BOWE, LLP, 595 Market Street, Suite 800, San Francisco, California 94105.

On this 26th day of August, 2016, I caused to be served a true and correct copy of the above and foregoing:

**NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS AND TO STRIKE AFFIRMATIVE DEFENSES**

via ECF filing, properly addressed to the following:

Christopher Frederick Wohl
Treaver Kent Hodson
Palmer Kazanjian Wohl Hodson, LLP
Suite 455
(916) 442-3552
Fax: (916) 640-1521
Email: cwohl@pkwhlaw.com
Email: thodson@pkwhlaw.com

*Attorneys for Shingle Springs Band of Miwok Indians*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 26th day of August, 2016 at San Francisco, California.

                                                  */s/ Suzanne Scanlon*
                                                  Suzanne Scanlon

1

**MEMORANDUM ISO MOTION FOR JUDGMENT ON THE PLEADINGS AND TO STRIKE AFFIRMATIVE DEFENSES**    Case No. 2:16-cv-000384-TLN-EFB