1

Christopher F. Wohl, SBN: 170280
Tiffany T. Tran, SBN: 294213

2

PALMER KAZANJIAN WOHL HODSON LLP
2277 Fair Oaks Boulevard, Suite 455

3

Sacramento, CA 95825
Telephone:     (916) 442-3552

4

Facsimile:     (916) 640-1521

5

Attorneys for Respondent
SHINGLE SPRINGS BAND OF MIWOK INDIANS

6

7

8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

9

10

UNITE HERE INTERNATIONAL
UNION,

Case No. 2:16-CV-00384-TLN-EFB

11

Petitioner,

**RESPONDENT SHINGLE SPRINGS BAND**

12

v.

**OF MIWOK INDIANS' MEMORANDUM**
**OF POINTS AND AUTHORITIES IN**
**OPPOSITION TO PETITIONER'S**

13

SHINGLE SPRINGS BAND OF
MIWOK INDIANS; DOES 1-100,

**MOTION FOR JUDGMENT ON THE**
**PLEADINGS**

14

15

Respondent.

Date:       October 6, 2016

16

Time:       2:00 p.m.
Ctrm:       2, 15th Floor

17

18

19

20

21

22

23

24

25

26

27

28

RESPONDENT SHINGLE SPRINGS BAND OF MIWOK INDIANS'
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS

# **TABLE OF CONTENTS**

I.    Introduction ................................................................................................................ 1

II.   Relevant Statement of Facts ....................................................................................... 1

III.  Legal Argument ......................................................................................................... 4

    A.  The Union is Not Entitled to Judgment on the Pleadings Because the Tribe's Answer Raises Issues of Fact and Affirmative Defenses That Defeat Recovery. ................................ 4

        1.  The Court, and Not an Arbitrator, Must Determine Whether Employment Termination Decisions are Within the Scope of the MOA's Arbitration Provision. .......................................................................................................... 4

    B.  The Union's Motion to Strike Must Be Denied Because the Union Failed to Demonstrate that the Tribe's Affirmative Defenses Lack Merit. ................................ 9

        1.  The Tribe's First and Tenth Affirmative Defenses ....................................... 10

        2.  The Eleventh, Twelfth, and Fourteenth Affirmative Defenses ................... 10

        3.  The Tribe's Sixth, Seventh, and Eighth Affirmative Defenses ................... 11

        4.  The Tribe Third, Fourth, and Fifth Affirmative Defenses .......................... 12

        5.  The Second and Thirteenth Affirmative Defenses ....................................... 15

        6.  The Fourth and Ninth Affirmative Defenses ............................................... 16

IV.   Conclusion ............................................................................................................... 17

PALMER KAZANJIAN
WOHL HODSON LLP
2277 Fair Oaks Blvd., Suite 455
Sacramento, CA  95825
916.442.3552

RESPONDENT SHINGLE SPRINGS BAND OF MIWOK INDIANS'
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS

i.

# TABLE OF AUTHORITIES

## CASES

*Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Facetglas, Inc.* (4th Cir. 1988) 845 F.2d 1250 .................................................................................. 13

*American. Bakeries Co.* (1986) 280 N.L.R.B. 1373 ............................................... 13

*Beer, Soft Drink, Water, Fruit Juice, Local Union 744 v. Metropolitan Distributors, Inc.,* (7th Cir.1985) 763 ....................................................................................... 5

*California Trucking Asso. v. Corcoran* (N.D. Cal. 1977) 74 F.R.D. 534 ............... 6, 8

*Colaprico v. Sun Microsystems, Inc.* (N.D. Cal.1991) 758 F. Supp. 1335 ............... 9

*Commc'ns Workers of Am. v. Pac. Nw. Bell Tel. Co.* (9th Cir. 1964) 337 F.2d 455 ... 6

*Dodson v. Strategic Restaurants Acquisition Co. II, LLC* (E.D. Cal. 2013) 289 FRD 595 ................................................................................................................... 9

*Donovan v. Coeur d'Alene Tribal Forum* (9th Cir. 2009) 751 F.2d 1113 ............... 10

*Edwards v. Teamsters Local Union No. 36, Bldg. Material & Dump Truck Drivers* (9th Cir. 1983) 719 F.2d 1036 ................................................................... 7, 16

*El Vocero De Puerto Rico v. Union De Periodistas* (D.P.R. 1981) 532 F. Supp. 13 ... 6

*Fleming v. Pickard* (9th Cir. 2009) 581 F3d .......................................................... 4

*Gateway Coal Co. v. United Mine Workers* (1974) 414 U.S. 368 .......................... 12

*General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church* (9th Cir. 1989) 887 F2d 228 ........................................ 4

*Granite Rock Co. v. Int'l Bhd. Of Teamsters* (2010) 561 U.S. 287 ..................... 6, 12

*Heller Financial v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir.1989) ......... 9

*Hotel & Restaurant Employees Union Local 217 v. J.P. Morgan Hotel* (2d. Cir. 1993) 996 F.2d 561 ............................................................................................. 8, 14

*In re 2TheMart.com, Inc. Sec. Lit.,* (C.D. Cal 2000) 114 F.Supp.2d 955 ............... 9

*Kaiser Steel Corp. v. Mullins* (1982) 455 U.S. 72 ............................................... 15

*Litton Fin. Printing Division v. NLRB* (1991) 501 U.S. 190 .................................. 5

*Majestic Weaving Co., Inc. of New York* (1964) 147 NLRB 859 ........................... 13

*Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.* (6th Cir. 2015) 783 F3d 1045 ..................................................................................... 9

*Oracle America, Inc. v. Micron Technology, Inc.* (N.D. Cal. 2011) 817 F.Supp.2d 1128 ................................................................................................................. 10

*R.J. Corman Derailment Services, LLC v. International Union of Operating Engineers, Local Union 150, AFL-CIO* (7th Cir. 2003) 335 F.3d 643 ................. 4

*Republic Steel Corp. v. Maddox* (1965) 379 U.S. 650) ..................................... 7, 17

*Snow & Sons* (9th Cir. 1962) 134 N.L.R.B. 709 .............................................. 8, 14

*Snyder v. Navajo Nation* (9th Cir.2004) 382 F.3d 892 ....................................... 11

*Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g* (1986) 476 U.S. 877 ................................................................................................................. 11

PALMER KAZANJIAN
WOHL HODSON LLP
2277 Fair Oaks Blvd., Suite 455
Sacramento, CA 95825
916.442.3552

RESPONDENT SHINGLE SPRINGS BAND OF MIWOK INDIANS'
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS

ii.

*United Steelworkers of Am. v. American Manufacturing Co.,*(1960) 363 U.S. 564.....................5

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.* (1960) 363 U.S. 574 ...........................5

*United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574....................................................5

**<u>STATUTES</u>**

29 U.S.C. § 158..............................................................................................................................17

RESPONDENT SHINGLE SPRINGS BAND OF MIWOK INDIANS'
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS

iii.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

UNITE HERE International Union ("Union") alleges that the Shingle Springs Band of Miwok Indians (hereinafter the "Tribe") violated a neutrality agreement entitled "Memorandum of Agreement" (hereinafter the "MOA") by discharging two Tribe employees for supporting its organizing efforts.  However, the MOA only provides the framework for the representation process and may set forth provisions only to take effect <u>if</u> the union obtains majority status and becomes the exclusive representative of employees.  Accordingly, the MOA cannot be used to regulate the terms and conditions of the Tribe's employees. Indeed, neutrality agreements like the MOA are <u>not</u> collective bargaining agreements and hence do not confer any rights to the former employees.

The Union's motion for judgment on the pleadings must be denied because the MOA does not permit arbitration of employment termination decisions.  Further, the Tribe has never *agreed* that the MOA would permit arbitration of employment matters such as the purported wrongful termination of two former Tribe employees (which are claims subject to Tribal law).  There are no provisions in the MOA regarding employee discipline, termination, or applicable remedies such as back pay and reinstatement.  .  The MOA further confirms that the Tribe's sovereign immunity waiver does not and cannot give rise to any claim by these two employees, who are not even parties to the MOA.  However, the Union in an attempt to circumvent the Tribe's own internal processes, seeks direct legal redress on behalf of these two former Tribe employees, who may already bring employment claims through Tribal law.

## II.    RELEVANT STATEMENT OF FACTS[1]

The Tribe and the Union entered into a Memorandum of Agreement ("MOA") that that sets forth the parameters for the representation process which is expressly limited to the following three purposes:

- To ensure an orderly environment for the exercise by Bargaining Unit Employees of their rights under the TLRO;

---

[1] The Union's "Statement of Undisputed Facts" completely ignores the Tribe's affirmative defenses and central disputed material facts and legal issues that underpin the parties' dispute.

PALMER KAZANJIAN
WOHL HODSON LLP
2277 Fair Oaks Blvd., Suite 455
Sacramento, CA 95825
916.442.3552

RESPONDENT SHINGLE SPRINGS BAND OF MIWOK INDIANS'
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS

1    •  To avoid strikes, picketing, and/or other adverse economic or public relations activity

2       directed at the Tribe in the event the Union decides to conduct an organizing

3       campaign among Eligible Employees; and

4    •  Implementation of a Card Check Recognition Process pursuant to the terms of this

5       Agreement. (Complaint, Exhibit A, MOA, Recitals.)

6    The MOA also includes a limited dispute resolution provision and states, in relevant part as

7 follows:

8           The Parties agree that any disputes over the interpretation or
            application of this Agreement shall be submitted […] to expedited and
9           binding arbitration before an arbitrator selected from the TLP.  The
            arbitrator shall not modify, add to or subtract from this Agreement.
10          The arbitrator shall follow the arbitration procedures prescribed in the
            TLRO.   The arbitrator shall have the authority to order the non-
11          compliant party to comply with the Agreement.  The Parties hereto
            agree to comply with any order of the arbitrator, which shall be final
12          and binding, and shall be enforceable as provided in the TRLO.
            (Complaint, Exhibit A, MOA Section 10.)[2]
13

14   The MOA contains no provisions regarding employee discipline and/or termination and is

15 silent on any employee remedies such as back pay and/or reinstatement. (Answer, Seventh and

16 Eighth Affirmative Defenses.) The MOA is further devoid of any provision authorizing arbitration of

17 employment termination decisions.  (Answer, Sixth Affirmative Defense.)

18   On or about November 18, 2015, the Union sent the Tribe a letter falsely alleging that the

19 Tribe violated Section 5[3] of the MOA  by terminating employee Christopher Garrigues. Mr.

20 Garrigues, however, was terminated because he falsified documents and then lied to his manager,

21 which has nothing to do with the MOA. (Complaint, ¶ 18, Exhibit C.)

22   On January 7, 2016, the Tribe and the Union mediated multiple issues, but did not resolve the

23 dispute regarding the discipline and/or termination of any Tribe employees. (Complaint, ¶ 23.)

24

25

26 [2] The Union's motion asserts that the Tribe's denials to Paragraphs 16, 17, 18, 26, and 28 of the
   Union's Petition to Compel Arbitration do not "fairly respond to the substance of the allegation" and
27 should be deemed admissions.  However, these Paragraphs simply reference documents which speak
   for themselves.
28 [3] Section 5 requires the Tribe to remain neutral with respect to an employee's decision on Union
   representation. Section 5 contains no language regarding the hiring or firing of employees.

PALMER KAZANJIAN
WOHL HODSON LLP
2277 Fair Oaks Blvd., Suite 455
Sacramento, CA 95825
916.442.3552

RESPONDENT SHINGLE SPRINGS BAND OF MIWOK INDIANS'
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS

2.

On or about February 4, 2016, notwithstanding the mediation and in recognition of the inherent issues with negotiating over the terms and conditions of employment, the Tribe advised the Union that proceeding with dispute resolution concerning the employment terminations of two employees was tantamount to a grievance arbitration which would violate tribal and federal law. Indeed, the MOA does not govern employee discipline or the employment termination of Tribe employees. The MOA is further silent on any grievance procedures or accompanying remedies for employee disciplinary actions, such as back pay and/or reinstatement.  For these reasons the Tribe informed the Union that Tribe employee terminations are outside the scope of the MOA and the arbitration provision contained therein. The Tribe further informed the Union that it could not agree to arbitrate the termination of any employee until the Union obtained majority support as provided in the MOA.  Indeed, the Union was acting as if it already had majority support and was representing the employees of the Tribe when in fact it was <u>not</u> representing any of the Tribe's employees. (Complaint, ¶ 27, Exhibit G; Answer, Affirmative Defenses.)

The Tribe's February 4, 2016, letter also informed the Union that the MOA is not a collective bargaining agreement and therefore parties could not arbitrate an employment termination decision nor does Union have the right to negotiate any of the terms and conditions of Tribe employees .  The Tribe further reminded the Union that the decision to terminate an employee was a personnel matter that could only be governed by the Tribe's tribal court and not by the MOA's arbitration  provision. Moreover, the terminated Tribe employees are not parties to the MOA and therefore have no standing to enforce the Tribe's sovereign immunity waiver contained in Section 14(b) of the MOA. The Tribe has not waived its sovereign immunity with respect to any action or proceeding by any employee. (Complaint, ¶ 27, Exhibit G; *See* Answer, Affirmative Defenses.)

In response to the Union's petition to compel arbitration of the Tribe's termination of the two employees, the Tribe filed an Answer denying that the MOA supported the claims alleged in the Union's petition, that the MOA applied to termination decisions, and that the termination decisions are not subject to arbitration.  (ECF No. 18; Answer ¶ 1.)[4]

---

[4]  The Tribe also filed a related declaratory relief complaint seeking a determination regarding the scope of the MOA's arbitration provision and whether it applies to employment terminations.  (CITE DOCKET; see Notice of Related Cases Order (ECF No. 13)).  On July 18, 2016, the Union moved to

PALMER KAZANJIAN
WOHL HODSON LLP
2277 Fair Oaks Blvd., Suite 455
Sacramento, CA 95825
916.442.3552

RESPONDENT SHINGLE SPRINGS BAND OF MIWOK INDIANS'
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS

3.

### III.   LEGAL ARGUMENT

**A.      The Union is Not Entitled to Judgment on the Pleadings Because the Tribe's Answer Raises Issues of Fact and Affirmative Defenses That Defeat Recovery.**

Judgment on the pleadings is only appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. *Fleming v. Pickard* (9th Cir. 2009) 581 F3d 922, 925.[5] All inferences reasonably drawn from these facts must be construed in favor of the responding party. *Id.* at 925; *R.J. Corman Derailment Services, LLC v. International Union of Operating Engineers, Local Union 150, AFL-CIO* (7th Cir. 2003) 335 F.3d 643, 647. Thus, a plaintiff is not entitled to judgment on the pleadings if the answer raises issues of fact or an affirmative defense which, if proved, would defeat plaintiff's recovery. *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church* (9th Cir. 1989) 887 F2d 228, 230.

While the Union alleges that the Tribe's employment termination decisions are governed by the MOA and must be arbitrated (Complaint, ¶ 1), the Tribe asserts that its employment decisions are clearly not subject to the MOA and are therefore not subject to arbitration. (Answer, ¶ 1). Because there are disputed material facts at issue and affirmative defenses that would defeat the Union's request for relief, judgment on the pleadings must be denied.

### 1.      *The Court, and Not an Arbitrator, Must Determine Whether Employment Termination Decisions are Within the Scope of the MOA's Arbitration Provision.*

The Union's sole claim for relief is an order compelling arbitration of the two employment terminations pursuant to the MOA. However, the Supreme Court has made clear that the question of arbitrability under an arbitration agreement is for the courts to decide (and not the arbitrator). The

---

dismiss the Tribe's complaint. (ECF No. 10.) The Tribe filed an opposition, arguing that this Court has jurisdiction to rule on the Tribe's complaint because the dispute presents an issue of substantive arbitrability – namely, that the Tribe never agreed to arbitrate termination decisions and nothing in the MOA requires arbitration of these decisions. (ECF No. 13). The motion to dismiss is pending before this Court.

[5] Analysis under rule governing motions for judgment on the pleadings is substantially identical to analysis under rule governing motions to dismiss for failure to state a claim. *Estom Yumeka Maidu Tribe of the Enter. Rancheria of California v. California* (E.D. Cal. 2016) 163 F. Supp. 3d 769.

PALMER KAZANJIAN
WOHL HODSON LLP
2277 Fair Oaks Blvd., Suite 455
Sacramento, CA 95825
916.442.3552

RESPONDENT SHINGLE SPRINGS BAND OF MIWOK INDIANS'
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS

4.

Union's reliance on *United Steelworkers of Am. v. American Manufacturing Co.,*(1960) 363 U.S. 564 is misplaced. In a companion case issued the same day, *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.* (1960) 363 U.S. 574, 583, ft. 7, the U.S. Supreme Court made clear that "under both the agreement in this case and that involved in *American Manufacturing Co.,* 363 U.S. 564, the question of arbitrability is for the courts to decide."   Accordingly, the court (and not an arbitrator) must first determine whether the reluctant party has breached a promise to arbitrate.  *See id.* ("For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.)Questions of arbitrability are within the exclusive province of courts, not arbitrators, and therefore only this Court can determine if the MOA requires arbitration of the two employment terminations. See *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 583 n. 7 (1963); *Beer, Soft Drink, Water, Fruit Juice, Local Union 744 v. Metropolitan Distributors, Inc.,* (7th Cir.1985) 763 F.2d 300, 302-03 (courts ascertain whether the subject matter of a particular dispute is covered by the parties' arbitration agreement).

Nothing in the MOA requires arbitration of the Tribe's personnel decisions nor is there any provision within the MOA concerning employee discipline and/or termination. (*See* Answer, Sixth and Seventh Affirmative Defenses.)   The MOA does not contain a grievance procedure or accompanying remedies for employee disciplinary actions, such as back pay and/or reinstatement. (*See* Answer, Eighth Affirmative Defense; *Litton Fin. Printing Division v. NLRB* (1991) 501 U.S. 190, 209 (although the court may not decide the merits of the grievance, the court "must determine whether the parties agreed to arbitrate this dispute, and [the court] cannot avoid that duty because it requires [court] to interpret a provision of a bargaining agreement.")[6]

---

[6]      The U.S. Supreme Court in *Litton* "appeared to instruct that the judicial responsibility to determine arbitrability takes precedence over the general rule to avoid consideration of the merits of a grievance[.]"  *IBEW v. GKN Aero. N. Am., Inc.* (8th Cir. 2005) 431 F.3d 624, 528. The Union relies on *United Steelworkers of Am. v. Am. Mfg. Co. (American Manufacturing Co.)* (1960) 363 U.S. 564, 568 for the proposition that submitting this dispute to arbitration is proper. As an initial matter, *American Manufacturing Co.* is inapplicable here because there is no collective bargaining agreement at issue in this action. Further, the Tribe alleges that there is no obligation to arbitrate because termination decisions do not fall within the scope of the MOA. This is indisputably a question of arbitrability and within the exclusive province of courts. Only this Court can determine if the MOA requires arbitration of the two employment terminations. See *United Steelworkers v. Warrior & Gulf Nav. Co.* (1963)363 U.S. 574, 583 n. 7.

PALMER KAZANJIAN
WOHL HODSON LLP
2277 Fair Oaks Blvd., Suite 455
Sacramento, CA 95825
916.442.3552

RESPONDENT SHINGLE SPRINGS BAND OF MIWOK INDIANS'
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS

5.

In spite of the MOA's clear limitations, the Union attempts to circumvent longstanding federal labor law claiming that the Tribe's employment decisions are subject to the MOA's arbitration provision. However, the Union's claim is not supported by the MOA or federal labor law: the Tribe's employment decisions do not and cannot fall within the scope of the MOA's arbitration provision. *Granite Rock Co. v. Int'l Bhd. Of Teamsters* (2010) 561 U.S. 287, 287 (courts determine threshold issues as the scope of the arbitration clause and its enforceability, as well as whether and when the parties agreed to the clause).

It is a fundamental labor principle that "arbitration is strictly 'a matter of consent' and thus 'is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration[.]" *Granite Rock Co.*, 363 U.S. at 299 (internal citations omitted).   In determining the arbitrability of the dispute, courts must also consider the history of the parties' own interpretations of the agreement.   *Commc'ns Workers of Am. v. Pac. Nw. Bell Tel. Co.* (9th Cir. 1964) 337 F.2d 455, 459.  Indeed, the Ninth Circuit warned that:

> [The presumption regarding arbitrability] recognizes that if evidence of intent is of the 'most forceful' character, it need not be confined to the language of the contract; and it would appear clear that the decision whether such evidence dehors the agreement is of sufficient forcefulness is for the courts and not for the arbitrator. The Court, then, has not announced a rule of evidence; it has simply warned that the persuasive power of the evidence must be such that the truth emerges with forceful clarity. We apprehend, however, that it is still for the courts to search out the truth upon this issue.

*Id.*

Federal courts must also place practical and realistic construction on labor agreements, giving due consideration to the purpose which they are intended to serve.  See *California Trucking Asso. v. Corcoran* (N.D. Cal. 1977) 74 F.R.D. 534 (courts engage in contract interpretation principles in determining arbitrability); see also *El Vocero De Puerto Rico v. Union De Periodistas* (D.P.R. 1981) 532 F. Supp. 13 (in context of labor agreement, great weight should be given to interpretation of the agreement by parties thereto, and what parties actually intended is of the utmost importance).

The Tribe never, at any point, agreed that its personnel decisions, including employment terminations, would be governed by the MOA because to do so would violate federal law by giving

PALMER KAZANJIAN
WOHL HODSON LLP
2277 Fair Oaks Blvd., Suite 455
Sacramento, CA 95825
916.442.3552

RESPONDENT SHINGLE SPRINGS BAND OF MIWOK INDIANS'
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS

6.

the Union the right to negotiate over the terms and conditions of employees. (*See* Answer, Fourth and Fifth Affirmative Defenses.)  This is exactly why the Tribe and the Union agreed to <u>limit</u> the MOA to the following express purposes:

- To ensure an orderly environment for the exercise by Bargaining Unit Employees of their rights under the TLRO;

- To avoid strikes, picketing, and/or other adverse economic or public relations activity directed at the Tribe in the event the Union decides to conduct an organizing campaign among Eligible Employees; and

- Implementation of a Card Check Recognition Process pursuant to the terms of this Agreement.

(*See* Complaint, Exhibit A, MOA, Recitals (D).)

The Tribe and the Union never agreed to bargain and/or negotiate over the terms and conditions of *employment* and the MOA certainly contains no provision suggesting otherwise. (*See* Answer, Tenth Affirmative Defense.)  The Union knows full well that under a collective bargaining agreement a discharged union employee must first exhaust the grievance procedures before seeking direct legal redress.  *Edwards v. Teamsters Local Union No. 36, Bldg. Material & Dump Truck Drivers* (9th Cir. 1983) 719 F.2d 1036, 1038 (citing *Republic Steel Corp. v. Maddox* (1965) 379 U.S. 650).  The MOA is clearly not a collective bargaining agreement and it certainly does not contain any grievance procedure and/or applicable remedies for any Tribe employees including former employees Garrigues and Bond.  (*See* Answer, Eighth Affirmative Defense.)

If former Tribe employees Garrigues, Bond, (or any other Tribe member for that matter) wanted to challenge an employment decision made by the Tribe, they must comply with the Tribe's Employment Code.[7]  (*See* Answer, Ninth Affirmative Defense.)  The MOA does not govern the terms and conditions of their employment with the Tribe and Garrigues and Bond are not even parties to the MOA.  The Union is clearly attempting to bypass Tribal law attempting to arbitrate the terms and conditions of employment on behalf of these two former Tribe employees.  (*See* Answer,

---

[7]     Title 6 of the Tribe's Employment Code allows employees to bring a discrimination, retaliation, and/or harassment claim to Tribal Court or arbitration.

PALMER KAZANJIAN
WOHL HODSON LLP
2277 Fair Oaks Blvd., Suite 455
Sacramento, CA 95825
916.442.3552

RESPONDENT SHINGLE SPRINGS BAND OF MIWOK INDIANS'
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS

7.

Thirteenth Affirmative Defense.)  The Union's overbroad interpretation of the MOA would conceivably allow the Union to arbitrate *any and all* disciplinary actions or termination decisions by the Tribe, which the Tribe would never allow and clearly the MOA does not permit. See *California Trucking Asso. v. Corcoran* (N.D. Cal. 1977) 74 F.R.D. 534 (courts engage in contract interpretation principles in determining arbitrability).

The Union's proposed arbitration of these two Tribe employment claims would also violate the Tribe's right to sovereign immunity that is reserved in the MOA. (*See* Answer, Fourteenth Affirmative Defense.) The MOA confirms that the sovereign immunity waiver by the Tribe "shall not be enforced by any other party other than the Parties to the Agreement and shall not give rise to any claim or liability to any other third party other than the Parties hereto."[8] (Complaint, Exhibit A, MOA, Section 14(b).)  Thus, former Tribe employees Garrigues and Bond have no standing under federal law or the MOA to pursue any employment-related claims against the Tribe.  (*See* Answer, Thirteenth and Fourteenth Affirmative Defense.) If Garrigues and Bond desire to bring claims against the Tribe arising out of their employment they must first exhaust the Tribe's internal dispute resolution process in accordance with Tribal law (*supra*).

The express language of the MOA and bedrock principles of federal law demonstrate that the Tribe never agreed to arbitrate employment termination decisions and no reasonable interpretation of the arbitration provision suggests otherwise. *California Trucking Assoc. v. Corcoran* (N.D. Cal. 1977) 74 F.R.D. 534.   Indeed, neutrality agreements such as the MOA generally provide the framework for the representation process and may set forth provisions only to take effect if the union obtains majority status and becomes the exclusive representative of employees.  See *Snow & Sons* (9th Cir. 1962) 134 N.L.R.B. 709, enforced, 308 F.2d 687 (the NLRB will enforce voluntary recognition agreements where the employer agrees to a private alternative to a Board election and, as a result of that alternative procedure, has knowledge of the union's majority status); *Hotel & Restaurant Employees Union Local 217 v. J.P. Morgan Hotel* (2d. Cir. 1993) 996 F.2d 561 (employer and union entered into contract to govern conduct during union organizational campaign).

---

[8]     Federal law prohibits suits against Indian Tribes, unless the Tribe (or Congress) has clearly and unequivocally expressed consent to suit (which the Tribe has not done here). See *Santa Clara Pueblo v. Martinez* (1978) 436 U.S. 49, 56, 58-59 (Indian tribes may be sued only where the tribe or Congress unequivocally expresses consent to suit).

PALMER KAZANJIAN
WOHL HODSON LLP
2277 Fair Oaks Blvd., Suite 455
Sacramento, CA 95825
916.442.3552

RESPONDENT SHINGLE SPRINGS BAND OF MIWOK INDIANS'
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS

8.

1  However, unlike collective bargaining agreements, neutrality agreements like the MOA are <u>not</u>

2  collective bargaining agreements and cannot be treated as such.  (*Ibid; see* Answer, Second, Third,

3  Fourth, and Fifth Affirmative Defenses.)

4       As set forth above, the Union has raised affirmative defenses and disputed facts, taken

5  together with reasonable inferences drawn from those facts, defeat the Union's requested recovery

6  for an order compelling arbitration.  Accordingly, the Union's motion for judgment on the pleadings

7  must be denied.

8       **B.**    ***The Union's Motion to Strike Must Be Denied Because the Union Failed to***

9       ***Demonstrate that the Tribe's Affirmative Defenses Lack Merit.***

10       Rule 12(f) motions to strike are only granted when a defense is either (1) insufficient as a

11  matter of law or (2) insufficient as a matter of pleading. *Dodson v. Strategic Restaurants Acquisition*

12  *Co. II, LLC* (E.D. Cal. 2013) 289 FRD 595, 603. Affirmative defenses will be stricken "only when

13  they are insufficient on the face of the pleadings." *Heller Financial v. Midwhey Powder Co.,* 883

14  F.2d 1286, 1294 (7th Cir.1989).  An affirmative defense is presumed legally sufficient unless shown

15  it "lacks merit under any set of facts the defendant might allege." *Id.* at 603 (internal quote omitted).

16       Importantly, motions to strike are not favored and thus, not frequently granted "unless it is

17  clear that the matter to be stricken could have no possible bearing on the subject matter of the

18  litigation." *Colaprico v. Sun Microsystems, Inc.* (N.D. Cal.1991) 758 F. Supp. 1335, 1339.  When a

19  court considers a motion to strike, it "must view the pleading in a light most favorable to the

20  pleading party."  *In re 2TheMart.com, Inc. Sec. Lit.,* (C.D. Cal 2000) 114 F.Supp.2d 955, 965.  A

21  court must deny the motion to strike if there is any doubt whether the allegations in the pleadings

22  might be relevant in the action. *Id.*  In other words, a motion to strike should be granted only if "it

23  appears to a <u>certainty</u> that plaintiffs would succeed despite any state of the facts which could be

24  proved in support of the defense and are inferable from the pleadings." *Operating Engineers Local*

25  *324 Health Care Plan v. G & W Const. Co.* (6th Cir. 2015) 783 F3d 1045, 1050 (emphasis added

26  and internal quotes omitted).

27

28

RESPONDENT SHINGLE SPRINGS BAND OF MIWOK INDIANS'
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS

9.

1        ***1.        The Tribe's First and Tenth Affirmative Defenses***

2        The Tribe's first affirmative defense alleges that the Petition fails to contain facts sufficient

3   to state a claim upon which relief can be granted.  The Tribe's tenth affirmative defense alleges that

4   there was no breach of the MOA and therefore no basis for requiring the parties to arbitrate.  The

5   Union failed to demonstrate in its moving papers that these defenses are insufficient as a matter of

6   law.  See *Oracle America, Inc. v. Micron Technology, Inc.* (N.D. Cal. 2011) 817 F.Supp.2d 1128,

7   1132 (plaintiff must show that there is no issue of fact that might allow the defense to succeed, nor

8   any substantial question of law; and that plaintiff would be prejudiced by inclusion of the defense).

9        Indeed, as set forth more fully above, the Tribe sufficiently alleges (among other defenses)

10   that it did not agree to arbitrate termination decisions and therefore could not have breached the

11   MOA; that termination decisions do not fall within the scope of the arbitration provision; that the

12   Union lacks standing to arbitrate employment termination decisions; that proceeding with an

13   arbitration regarding employment termination decisions violates federal and tribal law; that the

14   Union is not the exclusive bargaining representative of employees and therefore cannot negotiate the

15   terms and conditions of employment; that the MOA is completely devoid of any provisions

16   regarding employee discipline/termination and applicable remedies for employee disciplinary

17   actions, or authorizing arbitrations of employment termination provisions; and, that the Tribe's

18   sovereign immunity is limited to compelling arbitration or confirming an arbitration award. *See*

19   *supra,* Part A.

20        Accordingly, the first and tenth affirmative defenses should not be stricken.

21        ***2.        The Eleventh, Twelfth, and Fourteenth Affirmative Defenses***

22        These affirmative defenses allege that employee discipline and/or termination decisions are

23   intramural personnel matters, that the Tribe has a recognized right to self-governance, and that the

24   Tribe's waiver of sovereign immunity is limited to compelling arbitration and confirming an

25   arbitration award.

26        While it is true that the tribal self-government exception is designed to except purely

27   intramural matters such as conditions of tribal membership, inheritance rules, and domestic relations,

28   (see *Donovan v. Coeur d'Alene Tribal Forum* (9th Cir. 2009) 751 F.2d 1113, 1116), these are not the

10.

only matters covered by this exception. *Snyder v. Navajo Nation* (9th Cir.2004) 382 F.3d 892, 895. Here, the Union attempts to interfere with the Tribe's own internal processes regarding employment claims as set forth in tribal law.  (*See supra,* Part B(5).)  Indeed, a tribe's self-governance is a necessary corollary to the common-law sovereign immunity possessed by a tribe. *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g* (1986) 476 U.S. 877, 890.

The Union argues that it seeks to compel the Tribe to keep the promises it made in the MOA.[9]  However, the Tribe never agreed to arbitrate employment termination decisions.  The Union further argues that this is an action to confirm an arbitration award so the waiver of sovereign immunity applies.  First, this matter concerns is a petition to compel arbitration and nothing more. Second, the MOA confirms that the sovereign immunity waiver by the Tribe "shall not be enforced by any other party other than the Parties to the Agreement and shall not give rise to any claim or liability to any other third party other than the Parties hereto."[10] (*See* Complaint, Exhibit A, MOA, Section 14(b).) However, the Union in an attempt to circumvent the Tribe's own internal processes, seeks direct legal redress on behalf of two former employees, who are not even parties to the MOA and have no standing under federal and tribal law.

### 3.     The Tribe's Sixth, Seventh, and Eighth Affirmative Defenses

These affirmative defenses allege that the MOA does not authorize arbitration of employment termination decisions nor does it contain any provision regarding employee discipline and/or termination, any grievance procedure, or accompanying remedies of employment disciplinary actions, such as back pay and/or reinstatement. Indeed, nothing in the MOA requires arbitration of employment termination decisions because the Tribe never agreed to arbitrate termination decisions.

Despite such forceful evidence of a purpose to exclude employment termination decisions from the scope of the arbitration provision, the Union alleges (incorrectly) that the MOA requires the

---

[9] Mere legal conclusions are not entitled to the assumption of truth, on a motion to dismiss for failure to state a claim. <u>Jackson v. Barnes</u>, 749 F.3d 755 (9th Cir. 2014), <u>cert. denied,</u> 135 S. Ct. 980 (2015).

[10] Federal law prohibits suits against Indian Tribes, unless the Tribe (or Congress) has clearly and unequivocally expressed consent to suit (which the Tribe has not done here). See *Santa Clara Pueblo v. Martinez* (1978) 436 U.S. 49, 56, 58-59 (Indian tribes may be sued only where the tribe or Congress unequivocally expresses consent to suit).

PALMER KAZANJIAN
WOHL HODSON LLP
2277 Fair Oaks Blvd., Suite 455
Sacramento, CA 95825
916.442.3552

RESPONDENT SHINGLE SPRINGS BAND OF MIWOK INDIANS'
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS

11.

1   Tribe to arbitrate the terminations of Mr. Bond and Mr. Garrigues.  Longstanding principles of labor

2   law dictate that whether the parties have agreed to arbitrate employment termination decisions is

3   question of substantive arbitrability for courts to decide.  *Granite Rock Co. v. Int'l Bhd. Of*

4   *Teamsters* (2010) 561 U.S. 287, 287 (courts determine threshold issues as the scope of the arbitration

5   clause and its enforceability, as well as whether and when the parties agreed to the clause).  As set

6   forth above in Part A, labor arbitrators have authority to resolve labor disputes only because the

7   parties previously agreed to submit their grievances to arbitration.  *Gateway Coal Co. v. United Mine*

8   *Workers* (1974) 414 U.S. 368, 374.   Accordingly, "courts should order arbitration of a dispute only

9   where the court is satisfied that neither the formation of the parties' arbitration agreement nor […] its

10  enforceability or applicability to the dispute is in issue. Where a party contests either or both matters,

11  'the court' must resolve the disagreement." *Id.* (Internal citations omitted.)  Here, the Tribe contests

12  the scope of the arbitration provision to the termination decisions at issue here.   The Union's

13  argument that this case fails to present a dispute about substantive arbitrability is unavailing.

14      ***4.***      ***The Tribe's Third, Fourth, and Fifth Affirmative Defenses***

15          These affirmative defenses allege that the MOA is not a collective bargaining agreement, that

16  arbitrating employment termination decisions violate the National Labor Relations Act ("NLRA")

17  and tribal law, and that the Union is not the exclusive bargaining representative of employees and

18  therefore cannot negotiate the terms and conditions of the employment relationship.  In support of its

19  motion to strike these defenses, the Union argues that an employer's promise of neutrality does not

20  violate the NLRA and that Sections 8(a)(1) and (3) of the NLRA prohibit the Tribe from discharging

21  employees for supporting a union.   However, the Tribe does not contest the propriety of the

22  neutrality provision.  The Union's reference to Sections 8(a)(1) and (3) of the NLRA are misplaced

23  as these sections do not remotely apply to the parties' dispute in this matter.  In fact, Sections 8(a)(1)

24  and (3) actually provide Mr. Garrigues, Mr. Bond, or any other Tribal employee with another avenue

25  for redress.

26          The Tribe's position is that the NLRA proscribes employers from favoring any union that has

27  failed to demonstrate majority status and that does not represent an appropriate bargaining unit of the

28  workforce.  29 U.S.C. § 158(a)(2) (it shall be an unfair labor practice for an employer "to dominate

RESPONDENT SHINGLE SPRINGS BAND OF MIWOK INDIANS'
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS

or interfere with the formation or administration of any labor organization or contribute financial or other support to it").  The MOA expressly prohibits the Tribe from granting the Union any support as it pursues majority status and attempts to gain the status of exclusive representative of an appropriate bargaining unit.  MOA, Section 5(b) ("for the purposes of this Agreement "Neutrality" means that Manager or management shall not express any opinion for or against Union representation of any existing or proposed bargaining unit composed of Bargaining Unit  Employees, or for or against the Union or any officer, member or representative thereof in their capacity as such").  Accordingly, neutrality agreements like the MOA may not be used to regulate the terms and conditions of employees in the workplace because the Union has no majority status and represents no employees. See *Majestic Weaving Co., Inc. of New York* (1964) 147 NLRB 859, 862 ("there 'could be no clearer abridgment' of the Section 7 rights of employees than impressing upon a nonconsenting majority an agent granted exclusive bargaining status") (internal citations omitted); see also *American. Bakeries Co*. (1986) 280 N.L.R.B. 1373, 1377 (any "bargaining prior to achievement of the union's majority status is violative.").

Indeed, the Union has failed to cite even one case where a court compelled arbitration of an employment termination decision pursuant to a neutrality agreement.  The Union erroneously relies on *Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Facetglas, Inc.* (4th Cir. 1988) 845 F.2d 1250, contending that the court enforced an election agreement which prohibited discriminatory discharges even though the union did not represent employees.  *Facetglas*, however, does not stand for this proposition.  In *Facetglas*, the Union brought breach of contract claims against an employer over a wage agreement and an election agreement.  The court addressed jurisdictional issues of the Board and the court, and the court remanded the case for further determination on whether specific claims arising from an alleged breach of the election agreement could be resolved without resolving representational issues.  *Id.* at 1253.   The court did not, however, make any finding regarding the propriety of the Union's request for damages and the reinstatement of two employees.  *Id.* ("Further, the Union seeks monetary damages and reinstatement of two employees, not a new election.  <u>To the extent that appropriate relief, if any, may be determined</u> without deciding the ultimate outcome of the election, the district court is the proper forum.") (Emphasis added.)

PALMER KAZANJIAN
WOHL HODSON LLP
2277 Fair Oaks Blvd., Suite 455
Sacramento, CA 95825
916.442.3552

RESPONDENT SHINGLE SPRINGS BAND OF MIWOK INDIANS'
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS

13.

*Facetglas* is also inapplicable to the dispute in this case because there is no election agreement.[11]   In addition, the Union's sole claim for relief is a petition compelling arbitration; the Union does not seek monetary damages and/or reinstatement of employees pursuant to a breach of contract claim.   Moreover, while the election agreement in *Facetglas* contained a provision governing the employer's hiring decisions, there is no express or implied provision in the MOA that remotely relates to the Tribe's employment decision making.

Neutrality agreements such as the MOA generally provide the framework for the representation process and may set forth provisions only to take effect if the union obtains majority status and becomes the exclusive representative of employees.   See *Snow & Sons* (9th Cir. 1962) 134 N.L.R.B. 709, enforced, 308 F.2d 687 (the NLRB will enforce voluntary recognition agreements where the employer agrees to a private alternative to a Board election and, as a result of that alternative procedure, has knowledge of the union's majority status); *Hotel & Restaurant Employees Union Local 217 v. J.P. Morgan Hotel* (2d. Cir. 1993) 996 F.2d 561 (employer and union entered into contract to govern conduct during union organizational campaign). Unlike collective bargaining agreements, neutrality agreements do not evidence a contract reached after the union has obtained majority status and after extensive bargaining negotiations between the parties.   Simply put, neutrality agreements like the MOA are <u>not</u> collective bargaining agreements and cannot be treated as such. *Ibid.*

*Dana Corp. and International Union* (Dec. 6, 2010) 356 N.L.R.B. No. 49, 2010 WL 4963202, is particularly instructive here.   In *Dana Corp.*, the National Labor Relations Board considered the terms of a neutrality agreement and provided certain factors that, if found, would demonstrate a violation of Section 8(a)(2).   Specifically, the Board opined that if a union purported to speak for the employees or was treated as if it did, Section 8(a)(2) was violated; if the neutrality agreement affected existing terms and conditions of employment or obligated the employer to violate such terms and conditions, it violated Section 8(a)(2); or if the neutrality agreement, its

---

[11] The MOA provides for a card-check procedure to determine whether employees elect the Union as their exclusive bargaining representative.

PALMER KAZANJIAN
WOHL HODSON LLP
2277 Fair Oaks Blvd., Suite 455
Sacramento, CA 95825
916.442.3552

RESPONDENT SHINGLE SPRINGS BAND OF MIWOK INDIANS'
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS

14.

context, or the parties' conduct would reasonably lead employees to believe recognition of the union was a foregone conclusion, Section 8(a)(2) was violated. *Id.*

Here, Section 10 of the MOA contains a provision regarding arbitration of "disputes over the interpretation or application of [the] Agreement." (*See* Complaint, Exhibit A, MOA, Section 10.) The Union attempts to mischaracterize the employment termination decisions of two employees as an alleged violation of paragraph 5 of the MOA. In so doing, the Union is attempting to not only circumvent the employment procedures set forth in tribal law, but violate longstanding federal law at the same time. Indeed, any arbitration of an employment termination decision would most certainly violate the factors identified in *Dana Corp.* Arbitrating the propriety of the two employee terminations indicates to Tribal employees that the Union *already* represents them and is able to petition on their behalf, without complying with the card check process set forth in the MOA and in compliance with the NLRA.

Arbitrating these two Tribal employment matters also gives the (false) impression that union representation is either inevitable or already in effect. The requested grievance arbitration forces the Tribe to treat the Union as if it speaks on behalf of its employees and will undoubtedly affect the existing terms and conditions of the employment relationship. Any such bargaining should only follow actual recognition pursuant to the terms of the MOA. See *Dana Corp.*, 356 N.L.R.B No. 49, 2010 WL 4963202 at *9. Importantly, there is little doubt that proceeding with arbitration would "reasonably [lead] employees to believe that recognition of [the Union] is a foregone conclusion." *See id.*

Certainly, there can be no more forceful evidence of a purpose to exclude employment termination decisions from arbitration than the violation of federal law. See *Kaiser Steel Corp. v. Mullins* (1982) 455 U.S. 72, 83 ("…a federal court has a duty to determine whether a contract violates federal law before enforcing it"). Adopting the Union's posture on the arbitrability of employment termination decisions violates Section 8(a)(2) of the NLRA.

### 5.   *The Second and Thirteenth Affirmative Defenses*

The Tribe's second and thirteenth affirmative defenses allege that the Union lacks standing to arbitrate internal personnel decisions of the Tribe and that Mr. Garrigues and Mr. Bond are not

PALMER KAZANJIAN
WOHL HODSON LLP
2277 Fair Oaks Blvd., Suite 455
Sacramento, CA 95825
916.442.3552

RESPONDENT SHINGLE SPRINGS BAND OF MIWOK INDIANS'
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS

15.

parties to the MOA.  As set forth above in Part B(3) (*see supra*), the Union is not the exclusive bargaining representative of employees, cannot bargain over the terms and conditions of employment, and thus has no standing to arbitrate the propriety of termination decisions of employees it does not represent.

### 6.      The Fourth and Ninth Affirmative Defenses

The Tribe's fourth affirmative defense alleges that proceeding with an arbitration regarding employment termination decision violates the NLRA and tribal law, including the Tribal Labor Relations Ordinance ("TLRO").  The Tribe's ninth affirmative defense alleges that employees can only bring claims regarding discipline and/or termination decisions by following tribal law procedures and Mr. Garrigues and Mr. Bond have not followed such procedures in this case.

Here, the Union argues that tribal law is irrelevant and that in any event, the TLRO requires arbitration of disputes.  As an initial matter, the MOA expressly refers to the TLRO and compliance with the TLRO throughout the agreement, including the arbitration provision.[12]  (*See* Complaint, Exhibit A, MOA, Section 10 ("The arbitrator shall follow the arbitration procedures prescribed in the TLRO […] The Parties hereto agree to comply with any order of the arbitrator, which shall be final and binding, and shall be enforceable as provided in the TLRO.")  Moreover, the TLRO requires arbitration of certain matters, including matters relating to organizing and election procedures, as well as matters after a union has obtained majority status, such as alleged unfair labor practices and discharge of employees. (*See* Complaint, Exhibit B, TLRO, Section 13.) Again, the Union does not represent the Tribe's employees at present time.  Contrary to the Union's contention, the TLRO does not require arbitration of employment termination decisions under the MOA.

Moreover, a discharged employee must exhaust the grievance procedures provided by a collective bargaining agreement before seeking direct legal redress.  *Edwards v. Teamsters Local Union No. 36, Bldg. Material & Dump Truck Drivers* (9th Cir. 1983) 719 F.2d 1036, 1038 (citing

---

[12] The U.S. Supreme Court has also been careful to protect the principle of tribal sovereignty and that Indian tribes possess broad powers of self-governance. See e.g., *Merrion v. Jicarilla Apache Tribe*, (1982) 455 U.S. 130, 169 (recognizing substantive tribal law may be enforced in tribal courts).

PALMER KAZANJIAN
WOHL HODSON LLP
2277 Fair Oaks Blvd., Suite 455
Sacramento, CA 95825
916.442.3552

RESPONDENT SHINGLE SPRINGS BAND OF MIWOK INDIANS'
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS

16.

*Republic Steel Corp. v. Maddox* (1965) 379 U.S. 650).[13]  Mr. Garrigues and Mr. Bond, the two employees whose employment terminations the Union seeks to challenge, are not parties to the MOA and have not exhausted their remedies in accordance with the procedures set forth in tribal law.   The Union does not and cannot refute this.

## IV.   CONCLUSION

The Tribe has alleged affirmative defenses that defeat the Union's requested relief for an order compelling arbitration.  The Union has also failed to meet its burden in demonstrating that the Tribe's affirmative defenses are irrelevant to this matter and that they lack merit under the facts the Tribe alleges.  Accordingly, the Union's motion for judgment on the pleadings and motion to strike the Tribe's affirmative defenses must be denied.

Dated: September 22, 2016                         PALMER KAZANJIAN WOHL HODSON LLP


By: /s/ Christopher F. Wohl
    Christopher F. Wohl
    Tiffany Tran
    Attorneys for Respondent
    SHINGLE SPRINGS BAND OF MIWOK
    INDIANS

---

[13] Because the MOA is not a collective bargaining agreement, it does not contain any grievance procedure and/or applicable remedies for employees.

PALMER KAZANJIAN
WOHL. HODSON LLP
2277 Fair Oaks Blvd., Suite 455
Sacramento, CA 95825
916.442.3552

RESPONDENT SHINGLE SPRINGS BAND OF MIWOK INDIANS'
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS

17.